UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF THE HOLDERS OF COMM 2015-PC1 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, acting by and through RIALTO CAPITAL ADVISORS, LLC,<br><br>         Plaintiff,<br><br>  v.<br><br>RIVERVIEW ASSETS LLC,<br><br>         Defendant. | Civil Action File No.<br><br>_____ |

## COMPLAINT

Plaintiff Wilmington Trust, National Association ("Trustee"), as Trustee, for the Benefit of the Holders of COMM 2015-PC1 Mortgage Trust Commercial Mortgage Pass-Through Certificates (the "Trust") (Trustee as trustee of the Trust shall be referred to hereinafter as "Plaintiff"), acting by and through Rialto Capital Advisors, LLC ("Special Servicer"), as Special Servicer under the Pooling and Servicing Agreement dated as of July 1, 2015 (the "PSA"), states its complaint as follows:

## PARTIES, JURISDICTION AND VENUE

1. Trustee, acting solely in its capacity as trustee of the Trust, is a national banking association with its designated main office located in Wilmington, Delaware.

2. Trustee is the duly appointed and presently serving trustee of the Trust created under the PSA.

3. Trustee, not individually, but solely in its capacity as trustee for the Trust under the PSA, acting by and through the Special Servicer, brings this action with express

reference to the Loan (defined below) and the matters related thereto as hereinafter set forth. Based upon the Delaware citizenship of Trustee, Plaintiff is a citizen of Delaware.

4. Defendant Riverview Assets LLC ("Borrower") is a New York limited liability company having a principal place of business located at 2329 Nostrand Avenue, Suite 500, Brooklyn, New York 11210. Borrower is the owner of certain real property and improvements commonly known as the Riverview Center, located at 150 Broadway, Menands, New York 12204, and more particularly described in Exhibit 1 annexed hereto (the "Property"). As Borrower is a limited liability company, its citizenship is determined by that of its members. Upon information and belief, Borrower is a citizen of New York, New Jersey and Israel based upon the citizenship of Borrower's members.

5. Based on the foregoing, this Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a) because it is between citizenship of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Pursuant to Section 11.3(b) of the Loan Agreement, the state and federal courts located in New York County, New York are the exclusive venue of disputes under the contract:

> ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE NOTE OR THE OTHER LOAN DOCUMENTS MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

7. Based on the foregoing mandatory forum selection clause, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) (3).

8. Borrower has consented to Plaintiff's commencement of this action.

## FACTUAL BACKGROUND

### FIRST COUNT
### (Mortgage Foreclosure)

**A.    The Loan.**

9. By Loan Agreement dated as of April 1, 2015 (the "Loan Agreement"), UBS Real Estate Securities Inc. ("Original Lender"), Plaintiff's predecessor-in-interest, agreed to make a loan to Borrower in the original principal amount of $34,500,000.00 (the "Loan").

10. As evidence of the Loan, Borrower, inter alia, executed and delivered to Original Lender a Promissory Note dated April 1, 2015 and in the original principal amount of $34,500,000.00 (the "Note").

11. As collateral security for the payment of the Note, Borrower executed, acknowledged and delivered to Original Lender a Consolidation, Modification and Restatement Agreement and Assignment of Leases and Rents dated as of April 1, 2015 (the "Mortgage") pursuant to which Borrower, inter alia, granted to Original Lender a security interest in the Property. On April 24, 2015, Original Lender recorded the Mortgage with the Albany County Clerk's Office (the "Clerk's Office") as Document No. 11821481 and in Book 6940 at Page 951, et seq, and duly paid the mortgage recording taxes  (The Loan Agreement, the Note, the Mortgage and all related loan documents shall be referred to collectively herein as the "Loan Documents").[1]

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings as ascribed in the Loan Documents.

12. The Mortgage also includes a security interest in favor of the holder of the Mortgage in, <u>inter alia</u>, the Fixtures (as defined in the Mortgage), the Equipment (as defined in the Mortgage), the Personal Property (as defined in the Mortgage) and other property constituting the Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (collectively, the "Collateral").

**B. <u>Assignment of the Loan Documents.</u>**

13. Original Lender executed an allonge to the Note, indorsed in blank (the "Allonge"), and delivered the Note, with the Allonge affixed thereto, to Plaintiff. By virtue of this delivery, Original Lender transferred to Plaintiff all of its rights, title and interest in and to the Note and Plaintiff became the holder of the Note.

14. Original Lender also executed and delivered an Assignment of Mortgage, dated July 14, 2015 (the "Assignment of Mortgage"), pursuant to which Original Lender transferred to Plaintiff all rights, title and interest in and to the Mortgage and Plaintiff became the holder of the Mortgage. On August 18, 2015, Plaintiff recorded with Assignment of Mortgage with the Clerk's Office as Document No. 11891964 and in Book 6989 at Page 403, <u>et seq</u>.

**C. <u>Borrower's Default Under the Loan Documents.</u>**

15. Pursuant to the express terms of the Loan Documents, the Maturity Date of the Loan is April 6, 2020.

16. Pursuant to Section 2.3.3 of the Loan Agreement, "Borrower shall pay to Lender on the Maturity Date the Outstanding Principal Balance, all interest which has accrued or would accrue through and including the last day of the Interest Period in which the Maturity Date occurs and all other amounts due hereunder and under the Note and the other Loan Documents."

17. Section 10.1(a)(i)(A) of the Loan Agreement provides that an Event of Default shall occur if, <u>inter alia</u>, "the payment due on the Maturity Date is not paid when due[.]"

18. By notice dated April 15 2020 (the "Notice of Default"), Plaintiff, through counsel, notified Borrower that an Event of Default has occurred and is continuing under the Loan Documents since April 6, 2020 as a result of, <u>inter alia</u>, Borrower's failure to pay the Outstanding Principal Balance and all other amounts due on the Maturity Date (the "Default") and demanded that Borrower remit the entire outstanding indebtedness due and owing pursuant to the Loan Documents.

19. Despite receipt of the Notice of Default, Borrower has failed to cure the Default and satisfy its obligations under the Loan Documents.

20. As a result of the Default, there is now due, owing and payable to Plaintiff under the Loan Documents: (i) approximately $30,785,396.84 in principal; (ii) accrued and unpaid interest at the contract and default rates; (iii) late charges; (iv) attorneys' fees, costs and expenses; and (v) all other sums provided for under the Loan Documents.

21. In order to protect the lien and security represented by the Mortgage during the pendency of this foreclosure action, Plaintiff may be compelled to pay insurance premiums, taxes, assessments, water charges, sewer charges, attorneys' fees, repairs and other expenses or charges affecting the Property.  Plaintiff asks that any amount so paid and expended by it during the pendency of this foreclosure action be added, pursuant to the Mortgage and the Loan Agreement, to its claim and be repaid to Plaintiff from the proceeds of the sale of the Property, together with interest thereon from the date that such expenditures are made, and that the same be added to the amounts due Plaintiff and secured by the Mortgage and the Loan Agreement.

22. The defendant named herein is obligated to pay the mortgage indebtedness and/or has, claims to have, or may have some possessory or other interest in or lien upon the Property, or some part thereof, which interest or lien, if any, accrued subsequent to, and is subject and subordinate to, the liens of the Mortgage.

23. No other action or proceeding has been brought to recover any part of the mortgage indebtedness herein described.

**WHEREFORE**, Plaintiff demands judgment against Borrower as follows:

A. Fixing the amount due to Plaintiff pursuant to the Loan Documents;

B. Directing that Plaintiff be paid the amounts due pursuant to the Loan Documents, with interest, advances, other charges, attorneys' fees and costs;

C. Adjudging that the Property be sold according to law to satisfy the amounts due to Plaintiff;

D. Barring and foreclosing Borrower from all equity of redemption in and to the Property;

E. Directing that a receiver be appointed to take immediate possession of the Property; and

F. Awarding such other and further relief as the Court may deem just and proper.

## SECOND COUNT
### (Security Interest Foreclosure)

24. Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 23 above, as if the same were set forth and repeated at length herein.

25. When Borrower executed the Mortgage, it granted valid and enforceable security interest in the Collateral.

6

26. To further perfect its interest in the Collateral, on April 22, 2015, Original Lender filed a Uniform Commercial Code Financing Statement with the New York Secretary of State ("NY SOS") as File Number 201504220199638 (the "State UCC-1"). The State UCC-1 names Original Lender as the secured party and Borrower as the debtor.

27. By Uniform Commercial Code Financing Statement Amendment filed with the NY SOS on August 12, 2015 as File Number 201508128309195, Original Lender assigned the State UCC-1 to First Interim Holder.

28. Additionally, on November 1, 2019, Plaintiff filed a Uniform Commercial Code Continuation with the NY SOS as File Number 201911016384941 (the "State UCC Continuation"). The State UCC Continuation names Plaintiff as the secured party and Borrower as the debtor.

29. To further perfect its interest in the Collateral, on May 6, 2015, Original Lender recorded a Uniform Commercial Code Financing Statement with the Clerk's Office as Document No. 11828937 (the "County UCC-1"). The County UCC-1 names Original Lender as the secured party and Borrower as the debtor.

30. By Uniform Commercial Code Financing Statement Amendment recorded with the Clerk's Office on August 18, 2015 as Document No. 11892098, Original Lender assigned the County UCC-1 to Plaintiff.

31. Additionally, on May 1, 2020, Plaintiff filed a Uniform Commercial Code Continuation with the Clerk's Office as Document No. 2020-624 (the "County UCC Continuation"). The County UCC Continuation names Plaintiff as the secured party and Borrower as the debtor.

527548.000005 23714381.1

32. Plaintiff holds a duly perfected security interest in the Collateral by virtue of the recorded Mortgage as well as the recorded County UCC-1, the filed State UCC-1, and the subsequent assignments and continuations thereof.

33. Pursuant to the terms of the Loan Documents, Plaintiff elects to have the Collateral sold together with the Property at a single public sale.

34. No person or entity possesses an interest in the Collateral superior to the security interest held by Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Borrower as follows:

A. Adjudging that the Collateral be sold together with the Property at a single public sale to satisfy the amounts due to Plaintiff; and

B. Barring and foreclosing Borrower of all equity of redemption in and to the Collateral.

### THIRD COUNT
### (Possession)

35. Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 34 above, as if the same were set forth and repeated at length herein.

36. By reason of Borrower's default under the terms of the Loan Documents, Plaintiff is entitled to possession of the Property and the Collateral located.

37. Borrower is now in possession of the Property and has deprived, and continue to deprive, Plaintiff of possession of the Property and Collateral.

**WHEREFORE**, Plaintiff demands judgment against Borrower:

A. Granting Plaintiff, its assignee or the purchaser of the Property at the foreclosure sale, possession of the Property and Collateral;

B. Awarding Plaintiff damages for mesne profits; and

C. Granting Plaintiff its costs of suit, including reasonable attorneys' fees.

**FOURTH COUNT**
**(Appointment of a Receiver)**

38. Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 37 above, as if the same were set forth and repeated at length herein.

39. The Leases, the Rents, the books, records and other property relating to the ownership and operation of the Property (collectively, the "Borrower's Assets") are the sole assets of Borrower.

40. Except for certain limited qualifications as set forth in the Loan Documents, Borrower has no personal liability for repayment of the Loan, and Plaintiff's primary recourse for repayment of the Loan is the collateral securing the Loan.

41. The Loan Documents expressly allow Plaintiff to seek, and indicate Borrower's express consent to, the appointment of a receiver upon the occurrence of an Event of Default.

42. Borrower and its agents are still in possession of some of the Borrower's Assets.

43. Plaintiff, as an interested and secured party, is potentially threatened with material losses and injuries, including the Borrower's Assets suffering continuous waste and a dissipation or diminution in value, if Borrower remains in control of Borrower's Assets.

44. Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Property and Borrower's Assets.

527548.000005 23714381.1

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A. Appointing a receiver of the Property and Borrower's Assets;

B. Directing all tenants in possession of the Property to pay the appointed receiver all rent, income and profits;

C. Awarding Plaintiff its costs of suit and attorneys' fees; and

D. Granting such other relief as is equitable and just.

Dated: New York, New York
July 13, 2020

**THOMPSON & KNIGHT LLP**

By: */s/ Keith M. Brandofino*
Keith M. Brandofino, Esq.
Maximiliano Rinaldi, Esq.
David V. Mignardi, Esq.
Attorneys for Plaintiff
  *Wilmington Trust, National Association,*
  *As Trustee, for the Benefit of the Holders of*
  *COMM 2015-PC1 Mortgage Trust Commercial*
  *Mortgage Pass-Through Certificates, acting by*
  *and through Rialto Capital Advisors, LLC*
900 Third Avenue, 20th Floor
New York, NY 10022
Keith.Brandofino@tklaw.com
Max.Rinaldi@tklaw.com
David.Mignardi@tklaw.com

**EXHIBIT 1**

## EXHIBIT A
## LEGAL DESCRIPTION

ALL THAT CERTAIN PLOT, piece or parcel of land, situate, lying and being in the Village of Menands, Town of Colonie, County of Albany and State of New York, bounded and described as follows:

**PARCEL I:**

BEGINNING at the point of intersection of the Northwesterly line of Broadway with the division line between lands now or formerly of Niagara Mohawk Power Corporation on the South and Montgomery Ward & Co. Incorporated on the North and runs thence along the New Northwesterly line of Broadway the following 9 courses and distances:

(1) North 40 degrees 22 minutes 49 seconds East, a distance of 25.90 feet;
(2) North 43 degrees 52 minutes 26 seconds East, a distance of 83.28 feet;
(3) North 42 degrees 09 minutes 06 seconds East, a distance of 102.77 feet;
(4) North 43 degrees 31 minutes 20 seconds East, a distance of 308.13 feet;
(5) North 42 degrees 34 minutes 24 seconds East, a distance of 61.81 feet;
(6) North 45 degrees 06 minutes 44 seconds East, a distance of 53.11 feet;
(7) North 29 degrees 35 minutes 05 seconds East, a distance of 52.64 feet;
(8) North 43 degrees 44 minutes 52 seconds East, a distance of 78.59 feet; and
(9) North 56 degrees 26 minutes 59 seconds East, a distance of 45.08 feet;

THENCE along the Southerly, Northwesterly and Northeasterly lines of lands of the Village of Menands the following 4 courses and distances:

(1) North 47 degrees, 23 minutes, West, a distance of 6.44 feet;
(2) North 19 degrees, 14 minutes, West, a distance of 25.87 feet;
(3) North 42 degrees, 37 minutes, East, a distance of 85.00 feet; and
(4) South 47 degrees, 23 minutes, East, a distance of 29.53 feet;

THENCE along the Westerly line of lands reputedly owned by Delaware & Hudson Railroad North 19 degrees 38 minutes East, a distance of 1222.13 feet;

THENCE along part of the Northerly line of lands conveyed to Montgomery Ward & Co. Incorporated North 74 degrees, 25 minutes West, a distance of 15.49 feet;

THENCE along the Easterly and Southerly lines of the Village of Menands the following 5 courses and distances:

(1) South 19 degrees, 49 minutes, West, a distance of 409.43 feet;
(2) South 28 degrees, 19 minutes, West, a distance of 124.68 feet;
(3) North 64 degrees, 57 minutes, West, a distance of 622.41 feet;
(4) South 21 degrees, 33 minutes, 14 seconds, West, a distance of 15.51 feet; and
(5) North 64 degrees 57 minutes, West, a distance of 50.09 feet;

Reference No.: 1638.002
Matter Name: Riverview Center
Pool: COMM 2015-PC1

THENCE along the easterly lines of lands of Menands Union Free School District the following 5 courses and distances:

(1) South 21 degrees 33 minutes 14 seconds West, a distance of 838.75 feet;
(2) South 42 degrees 23 minutes 30 seconds West, a distance of 371.0 feet;
(3) South 35 degrees 26 minutes 30 seconds West, a distance of 198.0 feet;
(4) South 29 degrees 59 minutes 30 seconds West, a distance of 188.10 feet; and
(5) South 36 degrees 11 minutes 38 seconds West, a distance of 190.0 feet;

THENCE along part of a Northeasterly line, part of a Northwesterly line and a Northeasterly line of lands of Niagara Mohawk Power Corporation the following 3 courses and distances:

(1) South 53 degrees 48 minutes 22 seconds East, a distance of 60.00 feet;
(2) North 36 degrees 11 minutes 38 seconds East, a distance of 351.5 feet; and
(3) South 53 degrees 48 minutes 22 seconds East, a distance of 522.23 feet; to the point and place of BEGINNING.

## PARCEL II:

BEGINNING at a point in the Northerly line of Wards Lane, said point also being the Southeast corner of lands formerly belonging to E. Morgan, now reputedly a westerly parcel of lands of New York Telephone Company;

THENCE along the Northerly line of Wards Lane South 53 degrees 48 minutes 22 seconds East, 60.00 feet to a point, said point being the Southwesterly corner of an easterly parcel of lands belonging to the New York Telephone Company;

THENCE along the westerly line of said easterly parcel of lands of the New York Telephone Company, North 35 degrees 47 minutes 30 seconds East, 350.00 feet to a point, said point being the Northwesterly corner of said Easterly parcels of lands of the New York Telephone Company and also being in the Southerly line of lands of the Niagara Mohawk Power Corporation;

THENCE along the Southerly line of lands of the Niagara Mohawk Power Corporation, North 53 degrees 48 minutes 22 seconds West, 60.00 feet to the Northeasterly corner of lands now or formerly of A. Monaco;

THENCE along the Easterly line, now or formerly of A. Monaco and formerly of E. Morgan now the New York Telephone Company westerly parcel, South 35 degrees 47 minutes 30 seconds West, 350.00 feet to the point or place of BEGINNING.

TOGETHER WITH a permanent right of way and easement to use as a driveway, the lands and premises of the Niagara Mohawk Power Corporation bounded and described as follows:

BEGINNING at the Southeasterly corner of Parcel 1; and

RUNNING THENCE along the division line between the lands of the Niagara Mohawk Power Corporation on the Southwest and Parcel 1 on the Northeast, North 53 degrees 48 minutes 22 seconds West, 60 feet to a point;

THENCE through the lands of Niagara Mohawk Power Corporation South 16 degrees 16 minutes West, 170.89 feet to the Northeasterly corner of lands now or formerly of A. Monaco;

THENCE along the Southerly line of lands of Niagara Mohawk Power Corporation and the Northerly line of Parcel 2, South 53 degrees 48 minutes 22 seconds East 60 feet to the Northwesterly corner of an easterly parcel of lands of New York Telephone Company;

THENCE through the lands of Niagara Mohawk Power Corporation, North 16 degrees, 16 minutes East, 170.89 feet to the point or place of BEGINNING.

Reference No.: 1638.002
Matter Name: Riverview Center
Pool: COMM 2015-PC1