USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/6/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RSS COMM2015PC1-NY RC, LLC, a New York limited liability company acting by and through RIALTO CAPITAL ADVISORS, LLC,<br><br>                        Plaintiff,<br><br>v.<br><br>RIVERVIEW ASSETS LLC,<br><br>                        Defendant. | Civil Action File No.<br>1:20-cv-05379 |

## FINAL JUDGMENT

THIS MATTER (the "Action") is before the Court by virtue of the Stipulation Consenting to Entry of Final Judgment (the "Stipulation"), dated January 13, 2021 and executed by and between Wilmington Trust, National Association, as Trustee, for the Benefit of the Holders of COMM 2015-PC1 Mortgage Trust Commercial Mortgage Pass-Through Certificates ("Former Plaintiff"), defendant Riverview Assets LLC ("Borrower") and non-party Tomas Rosenthal ("Guarantor") (Borrower and Guarantor collectively referred to as the "Borrower Parties") and counsel for the Parties. Upon review of the Stipulation, the Complaint (the "Complaint") filed in this Court on July 13, 2020 and the Notice of Pendency filed in this Court on August 18, 2020 and in the Albany County Clerk's Office on August 21, 2020 (the "Notice of Pendency"), for good cause shown, and with the consent of the parties, it is:

**ORDERED, ADJUDGED AND DECREED**, that Plaintiff is hereby granted final judgment as to the First Count, Second Count and Third Count of the Complaint; and it is further

**ORDERED, ADJUDGED AND DECREED,** that the amount due to Plaintiff under the loan documents that are the subject of this Action as of January 6, 2021 is $30,931,857.64, calculated as follows:

| | |
|---|---|
| Outstanding Principal Balance | $ 30,034,858.18 |
| Scheduled Note Interest 4.6% (through 1/6/2021 payment) | $      353,076.44 |
| Default Interest 9.6% (through 01/6/2021) | $   1,337,386.20 |
| UCC Filing Fee | $             45.23 |
| Payoff Fee | $        1,500.00 |
| Tax & Insurance Advances | $      162,871.98 |
| Other Property Advances | $        36,519.79 |
| Estimated IOA | $          2,837.31 |
| SS Fees | $        76,077.63 |
| Liquidation fee | $      305,613.68 |
| Suspense Balance | ($         10,447.39) |
| Reserve Balance | ($   1,464,143.41) |
| Legal Fees and Costs | $        95,662.00 |
| Total Amount due to Lender as of January 6, 2021 | $ 30,931,857.64 |

and it is further

**ORDERED, ADJUDGED AND DECREED**, that the certain real property and improvements commonly known as the Riverview Center, located at 150 Broadway, Menands, New York 12204, and more particularly described in the Complaint and Schedule A annexed hereto, together with the Collateral (as defined in the Complaint) located thereat (collectively, the "Property"), or such part thereof as may be sufficient to discharge: (a) the mortgage debt evidenced by the Consolidation, Modification and Restatement Agreement and Assignment of Leases and Rents, dated April 1, 2015, in the original principal amount of $34,500,000.00 (the "Mortgage"); and (b) the expense of the sale and the costs of this Action as provided by the New York Real Property Actions and Proceedings Law ("RPAPL"), be sold at public auction pursuant to the terms hereof,  by and under the direction of <u>Ira B. Warshawsky, Esq. from Meyer, Suozzi, English & Klein, P.C. located at 990 Stewart Avenue, Suite 300, P.O. Box 9194, Garden City, NY  11530-9194 telephone 516-592-5737</u> as Referee to sell the Property at public auction with the assistance of <u>Matthew Mannion from Mannion Auctions, LLC as Auctioneer located at 305 Broadway, Suite 200, New York, NY 10007 telephone 212-267-6698</u>; that the said Referee shall set the date of the

sale and give public notice of the time and place of such sale in accordance with RPAPL § 231, in the Times Union (publication); such public auction may be held either at the Albany County Courthouse, located at 16 Eagle Street, Albany, New York 12207 or pursuant to an online public auction conducted by the Referee with the assistance of the Auctioneer; and it is further

**ORDERED, ADJUDGED AND DECREED**, that the Referee shall accept at such sale the bid or bids that yield the largest amount of money for the Property and the bidder or bidders, as the case may be, so determined, shall be identified upon the court record, and the Referee shall require that such successful bidder or bidders, as the case may be, immediately pay to the Referee in cash or certified or bank check payable to such Referee, ten percent of the sum bid and shall execute Terms of Sale for the purchase of the Property unless such successful bidder is Plaintiff herein, in which case, no deposit against the purchase price shall be required; and it is further

**ORDERED, ADJUDGED AND DECREED**, that in the event that the successful bidder or bidders, as the case may be, fails to immediately pay the ten percent deposit as provided herein or fails to execute the Terms of Sale immediately following the bidding upon the Property, the Property shall thereafter immediately, on the same day, be reoffered at auction in the same manner as is set forth above; and it is further

**ORDERED, ADJUDGED AND DECREED**, that the closing of title shall take place at the office of the Referee or at such other location as the Referee shall determine within forty-five days after such sale unless otherwise stipulated by all parties. Any delay or adjournment of the closing date beyond forty-five days may be stipulated among the parties, with the Referee's consent; and it is further

**ORDERED, ADJUDGED AND DECREED**, that in the event that such successful bidder shall fail to close on the date set by the Referee, then the successful bidder shall lose and forfeit its deposit; and it is further

**ORDERED, ADJUDGED AND DECREED,** that the Referee deposit all funds received pursuant to this Judgment in a segregated interest-bearing account in the Referee's name and referencing the instant case, in a national, FDIC-insured bank doing business in the State of New York (the "Referee's Account"); and it is further

**ORDERED, ADJUDGED AND DECREED**, that said Referee on receiving the proceeds of such sale shall forthwith pay there from:

**FIRST:** The statutory fee of the Referee for conducting the sale pursuant to Section 8003 of Civil Practice Law and Rules ("CPLR") not to exceed $750.00.

**SECOND:** The expenses of the sale, including the Auctioneer fees and costs, the cost of advertising as shown on the bills presented and certified by said Referee to be correct, copies of which shall be annexed to the Report of Sale.

**THIRD:** Pursuant to RPAPL § 1354, in accordance with their priority according to law, taxes, assessments, sewer rents, water rates and any charges placed upon the Property by a city agency which have priority over the Mortgage, which are liens on the Property at the time of sale with such interest or penalties which may have lawfully accrued thereon to the date of payment.

**FOURTH:**   Said Referee shall also pay to Plaintiff or its attorneys the sum of $30,931,857.64 together with interest at the contract rates set forth in the loan documents from January 7, 2021, to the date which is 90 days after entry this Judgment, and the rate of interest of 4.6% thereafter (which represents the contract rate of interest set forth in the loan documents excluding the Default Rate of interest in the loan documents), and with all late charges, fees, attorney fees and other costs, or so much as the proceeds of the sale will pay of the same, and any expenses necessarily paid by Plaintiff to preserve the Property, such as the payment of taxes, etc., not previously included in any computations; and it is further

**ORDERED, ADJUDGED AND DECREED**, that in case Plaintiff be the purchaser of the Property at said sale, the Referee shall not require Plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver only to Plaintiff a deed of the Property and a bill of sale for the Collateral located thereat sold upon the payment to said Referee of the sum awarded to him or her under the above provisions marked "**FIRST**", "**SECOND**" and "**THIRD**" if such expenses were paid by the Referee, or in lieu of the payment of said last mentioned amounts, upon filing with said Referee receipts of the proper municipal authorities showing payment thereof.  The balance of the amount bid, after deducting therefrom the aforementioned payments to the Referee for compensation and expenses, taxes, assessments, sewer rents, water rates, shall be allowed to Plaintiff and applied by said Referee upon the amounts due to Plaintiff as specified in item marked "**FOURTH**".  If upon so applying the balance of the amount bid, there shall be a surplus over and above said amounts due to Plaintiff, Plaintiff shall

5

pay to the said Referee, upon delivery to Plaintiff of said Referee's Deed and Bill of Sale, the amount of such surplus.  Any surplus remaining after all payments as herein provided shall be deposited by the Referee into the Referee's Account  to be held in escrow in accordance with the provisions herein and the Referee shall immediately give notice of such surplus to the Borrower and the owner of the Property as identified by Plaintiff at the time of the sale; and it is further

**ORDERED, ADJUDGED AND DECREED**, that said Referee take the receipt of Plaintiff or its attorney for the amounts paid as hereinbefore directed in item marked "**FOURTH**", and file it with his Report of Sale, that he deposit the surplus monies, if any, in the Referee's Account within five days after the same shall be received unless such period be deemed extended by the filing of an application for additional compensation as set forth herein, to the credit of this Action, to be disbursed only upon order of the Court; that said Referee make his Report of such Sale under oath showing the disposition of the proceeds of the sale, accompanied by the vouchers of the persons to whom payment was made, and file it via ECF in this Court, within thirty days upon completing the sale and executing the proper conveyance to the purchaser or within thirty days of the decision of the court with respect to any application for additional compensation; and it is further

**ORDERED, ADJUDGED AND DECREED,** that in the event there are surplus monies in the Referee's Account, the Court shall retain jurisdiction of this Action to order disbursement of the surplus monies after a motion to confirm such report of sale; a motion to confirm such report of sale shall be made not earlier than three months after the filing of the report and shall in any event be made not later than four months after the filing of such report; where the report of sale shows surplus money, the party moving for confirmation of the report of sale shall file its motion on the ECF docket specifying the notices of claim to the surplus moneys, if any, so

filed and present with the motion an affidavit showing any other unsatisfied lien on the Property (a current title search shall be sufficient evidence to support the affidavit); on the motion for confirmation, on notice to all parties who have appeared in the Action or filed claims, on motion of any party to the Action, or any person who has filed a notice of claim on the surplus moneys, the court, by reference to the Referee or otherwise, shall ascertain and report the amount due to the movant or any other person who has a lien on such surplus moneys, and the priority of liens thereon and order the Referee to disburse the funds in the Referee's Account in accordance with the priority of such liens specified in the Order; and it is further

**ORDERED, ADJUDGED AND DECREED**, that if the proceeds of such sale be insufficient to pay the amount reported due to Plaintiff with interest and costs as aforesaid, pursuant to the Stipulation, the Plaintiff shall not be entitled to recover from Borrower the deficiency representing the residue of the mortgaged debt remaining unsatisfied after a sale of the Property except in the event that Borrower has defaulted pursuant to the Stipulation and Borrower fails to timely cure such default; and it is further

**ORDERED, ADJUDGED AND DECREED**, that the purchaser or purchasers at such sale be let into possession of the Property on production of the Referee's Deed and Bill of Sale; and it is further

**ORDERED, ADJUDGED AND DECREED**, that in the event that the Action is discontinued or the sale of the Property is cancelled, the Referee is entitled to a $250.00 fee; and it is further

**ORDERED, ADJUDGED AND DECREED**, that each and all of the defendants in this Action and all persons claiming under them, or any or either of them, after the filing of the

Notice of Pendency, be and they hereby are, barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the Property and each and every part thereof; and it is further

**ORDERED, ADJUDGED AND DECREED**, that the liens of Plaintiff other than the Mortgage that is the subject of this Action also be foreclosed herein as though Plaintiff was named as a party defendant, specifically reserving to Plaintiff its right to share in any surplus monies as a result of such position as a lien creditor; and it is further

**ORDERED, ADJUDGED AND DECREED**, that nothing contained herein shall prohibit Plaintiff from seeking payment from any policy of insurance insuring the Property; and it is further

**ORDERED, ADJUDGED AND DECREED**, that in the event that Plaintiff or its successors shall receive proceeds from (a) any insurance policy insuring the Property and/or (b) any judgment, now or hereafter obtained, against any party indebted to Borrower, then Plaintiff or its assigns, as the case may be, shall apply such proceeds to the amount due hereunder or to any deficiency against Borrower; and it is further

**ORDERED, ADJUDGED AND DECREED**, that in the event that the proceeds described in the foregoing decretal paragraph, when taken together with the proceeds resulting from a foreclosure sale, exceed the amount due hereunder, then Plaintiff, or its assigns, as the case may be, shall deposit the surplus monies, if any, with the Referee within thirty days after the same shall be received and the Referee shall deposit said monies in the Referee's Account within five days after receipt, to be disbursed only upon order of this Court; and it is further

**ORDERED ADJUDGED AND DECREED**, that the Property be sold in "as is" condition and sold subject to:

(a) Rights of the public and others in and to any part of the Property that lies within the bounds of any street, alley or highway;

(b) Restrictions, covenants, agreements, reservations, and easements of record, if any, insofar as the same may be in force and effect;

(c) Any state of facts an accurate, currently dated survey might disclose;

(d) Any facts an inspection of the Property would reveal;

(e) Rights of tenants and/or occupants in possession, if any;

(f) The right of redemption of the United States of America, if any;

(g) The rights of any defendants pursuant to CPLR §§ 317 and 2003 and Rule 5015, if any;

(h) Charges for maintenance of street vaults, if any;

(i) Building or tract restrictions or regulations;

(j) Violations, notices, orders or other requirements issued by any federal, state, city, county, town or village agencies having jurisdiction of record, if any, now or hereafter against the Property;

(k) Security agreements, conditional bills of sale and chattel mortgages, if any;

(l) The liens of any prior judgments, mortgages or other encumbrances of record;

(m) Any unpaid taxes, assessments and water rates with interest and penalties accrued;

(n) rights of tenants or persons in possession of the Property; prior mortgage liens of record and any advances and arrears thereunder; and

(o) Other conditions as set forth in the terms of sale more particularly to be announced at the sale;

That a description of the Property hereinbefore mentioned, is annexed hereto as Schedule A - Legal Description, said Property commonly known as the Riverview Center being located at 150 Broadway, Menands, New York 12204 and known as Section 55.13, Block 1, and Lot 3 on the Tax Map of Albany County, New York; and it is further

**ORDERED, ADJUDGED AND DECREED**, that the purchaser or purchasers at such sale shall pay for (i) any title insurance premiums; (ii) the Real Estate Transfer Tax (Article 31 of the New York Tax Law) and any other tax imposed upon or arising from the transfer of title; (iii) all abstract of title creation and/or continuation charges, and (iv) any other charges, occurring as a result of the transfer, including, but not limited to, the recording fees; and it is further

**ORDERED, ADJUDGED AND DECREED**, that the New York State Executive Order 202.8, and all amendments, extensions and reiterations thereof do not apply to this Action, the Property, to the entry of this Judgment and Plaintiff's enforcement thereof, including a foreclosure sale of the Property; and it is further

**ORDERED, ADJUDGED AND DECREED**, that Plaintiff shall conduct a foreclosure sale within ninety (90) days of the date of this Judgment in accordance with RPAPL §1351(1) or such later date with approval of this Court; and it is further

**ORDERED, ADJUDGED AND DECREED** that within fifteen (15) days from the date of the closing of title, the Receiver, William C. Colucci ("Receiver"), of Pyramid Brokerage Company (the "Property Manager") appointed by Consent Order Appointing Receiver filed on July 27, 2020, shall provide Plaintiff with a final accounting. Within fifteen (15) days after receipt of the final accounting and any supporting documentation in satisfactory form, Plaintiff,

shall either file a motion seeking an order, or a stipulation between Plaintiff, Borrower and the Receiver consenting to an order: (i) terminating the receivership; (ii) approving the Receiver's accounting; (iii) setting the Receiver's commission; (iv) setting its Property Manager's compensation as property manager; (v) discharging the Receiver and its agents, including but not limited to the Property Manager; (vi) discharging the Receiver's surety; and (vii) and dismissing, as moot, the Fourth Count of the Complaint seeking the appointment of a receiver. The Court shall retain jurisdiction of this Action for this purpose; and it is further

**ORDERED, ADJUDGED AND DECREED**, that Plaintiff shall serve a copy of this Judgment upon the owner of equity of redemption and any other party entitled to notice in the Action.

**SO ORDERED** this __6__ day of __March__, 2021.

*Mary Kay Vyskocil*
United States District Judge
Mary Kay Vyskocil
New York, NY

## SCHEDULE A

### (Property Description)

ALL THAT CERTAIN PLOT, piece or parcel of land, situate, lying and being in the Village of Menands, Town of Colonie, County of Albany and State of New York, bounded and described as follows:

### PARCEL I:

BEGINNING at the point of intersection of the Northwesterly line of Broadway with the division line between lands now or formerly of Niagara Mohawk Power Corporation on the South and Montgomery Ward & Co. Incorporated on the North and runs thence along the New Northwesterly line of Broadway the following 9 courses and distances:

(1) North 40 degrees 22 minutes 49 seconds East, a distance of 25.90 feet;
(2) North 43 degrees 52 minutes 26 seconds East, a distance of 83.28 feet;
(3) North 42 degrees 09 minutes 06 seconds East, a distance of 102.77 feet;
(4) North 43 degrees 31 minutes 20 seconds East, a distance of 308.13 feet;
(5) North 42 degrees 34 minutes 24 seconds East, a distance of 61.81 feet;
(6) North 45 degrees 06 minutes 44 seconds East, a distance of 53.11 feet;
(7) North 29 degrees 35 minutes 05 seconds East, a distance of 52.64 feet;
(8) North 43 degrees 44 minutes 52 seconds East, a distance of 78.59 feet; and
(9) North 56 degrees 26 minutes 59 seconds East, a distance of 45.08 feet;

THENCE along the Southerly, Northwesterly and Northeasterly lines of lands of the Village of Menands the following 4 courses and distances:

(1) North 47 degrees, 23 minutes, West, a distance of 6.44 feet;
(2) North 19 degrees, 14 minutes, West, a distance of 25.87 feet;
(3) North 42 degrees, 37 minutes, East, a distance of 85.00 feet; and
(4) South 47 degrees, 23 minutes, East, a distance of 29.53 feet;

THENCE along the Westerly line of lands reputedly owned by Delaware & Hudson Railroad North 19 degrees 38 minutes East, a distance of 1222.13 feet;

THENCE along part of the Northerly line of lands conveyed to Montgomery Ward & Co. Incorporated North 74 degrees, 25 minutes West, a distance of 15.49 feet;

THENCE along the Easterly and Southerly lines of the Village of Menands the following 5 courses and distances:

(1) South 19 degrees, 49 minutes, West, a distance of 409.43 feet;
(2) South 28 degrees, 19 minutes, West, a distance of 124.68 feet;
(3) North 64 degrees, 57 minutes, West, a distance of 622.41 feet;
(4) South 21 degrees, 33 minutes, 14 seconds, West, a distance of 15.51 feet; and
(5) North 64 degrees 57 minutes, West, a distance of 50.09 feet;

THENCE along the easterly lines of lands of Menands Union Free School District the following 5 courses and distances:

(1) South 21 degrees 33 minutes 14 seconds West, a distance of 838.75 feet;
(2) South 42 degrees 23 minutes 30 seconds West, a distance of 371.0 feet;
(3) South 35 degrees 26 minutes 30 seconds West, a distance of 198.0 feet;
(4) South 29 degrees 59 minutes 30 seconds West, a distance of 188.10 feet; and
(5) South 36 degrees 11 minutes 38 seconds West, a distance of 190.0 feet;

THENCE along part of a Northeasterly line, part of a Northwesterly line and a Northeasterly line of lands of Niagara Mohawk Power Corporation the following 3 courses and distances:

(1) South 53 degrees 48 minutes 22 seconds East, a distance of 60.00 feet;
(2) North 36 degrees 11 minutes 38 seconds East, a distance of 351.5 feet; and
(3) South 53 degrees 48 minutes 22 seconds East, a distance of 522.23 feet; to the point and place of BEGINNING.

## PARCEL II:

BEGINNING at a point in the Northerly line of Wards Lane, said point also being the Southeast corner of lands formerly belonging to E. Morgan, now reputedly a westerly parcel of lands of New York Telephone Company;

THENCE along the Northerly line of Wards Lane South 53 degrees 48 minutes 22 seconds East, 60.00 feet to a point, said point being the Southwesterly corner of an easterly parcel of lands belonging to the New York Telephone Company;

THENCE along the westerly line of said easterly parcel of lands of the New York Telephone Company, North 35 degrees 47 minutes 30 seconds East, 350.00 feet to a point, said point being the Northwesterly corner of said Easterly parcels of lands of the New York Telephone Company and also being in the Southerly line of lands of the Niagara Mohawk Power Corporation;

THENCE along the Southerly line of lands of the Niagara Mohawk Power Corporation, North 53 degrees 48 minutes 22 seconds West, 60.00 feet to the Northeasterly corner of lands now or formerly of A. Monaco;

THENCE along the Easterly line, now or formerly of A. Monaco and formerly of E. Morgan now the New York Telephone Company westerly parcel, South 35 degrees 47 minutes 30 seconds West, 350.00 feet to the point or place of BEGINNING.

**TOGETHER WITH** a permanent right of way and easement to use as a driveway, the lands and premises of the Niagara Mohawk Power Corporation bounded and described as follows:

BEGINNING at the Southeasterly corner of Parcel 1; and

2

RUNNING THENCE along the division line between the lands of the Niagara Mohawk Power Corporation on the Southwest and Parcel 1 on the Northeast, North 53 degrees 48 minutes 22 seconds West, 60 feet to a point;

THENCE through the lands of Niagara Mohawk Power Corporation South 16 degrees 16 minutes West, 170.89 feet to the Northeasterly corner of lands now or formerly of A. Monaco;

THENCE along the Southerly line of lands of Niagara Mohawk Power Corporation and the Northerly line of Parcel 2, South 53 degrees 48 minutes 22 seconds East 60 feet to the Northwesterly corner of an easterly parcel of lands of New York Telephone Company;

THENCE through the lands of Niagara Mohawk Power Corporation, North 16 degrees, 16 minutes East, 170.89 feet to the point or place of BEGINNING.